STATE OF INDIANA ET AL. *v.* BRAGG.

[No. 25,850.   Filed October 12, 1934.]

*James M. Ogden,* Attorney-General, and *Connor D. Ross,* Deputy Attorney-General, for appellants.

*William H. Eichhorn, George H. Ward,* and *Frederick S. Caldwell,* for appellee.

HUGHES, C. J.—This is an appeal from the Randolph circuit court wherein the appellee filed an action against the State, the State Highway Commission, the Director, certain named employees, and the contractor, in two paragraphs. The first paragraph asked for injunctive relief, and the second for an assessment of damages for the appropriation of ten feet of ground alleged to belong to the appellee. The trial court's finding, order, and judgment rest solely on the second paragraph of complaint which asked for damages for the taking of the ten foot strip of ground.

The second paragraph of complaint is as follows:

" 'Plaintiff, Daniel Bragg, for his second paragraph of complaint complains of the defendants the State of Indiana, the State Highway Commission of the State of Indiana, and A. J. Wedeking, Jesse L. Murden, George E. Hershman and Robert B. Boren, members of the State Highway Commission of the State of Indiana as such members, and John D. Williams, Director of the State Highway Commission of the State of Indiana, as such director says: That the plaintiff is the owner in fee of the following described real estate situate in Randolph County, State of Indiana, to wit:

" 'Sixty (60) acres off of the North side of the Northwest quarter of section twenty-eight (28), township twenty-one (21) north, range fourteen (14) east.

" 'That in the year 1865 a public highway extended from Winchester, in Randolph County, Indiana, northward through Deerfield and thence northward to the Jay County line. That said public highway had existed as such for many years

prior to 1865, the exact time being unknown to plaintiff and was the only public highway extending from Winchester through Deerfield to the county line. That said public highway had been and was established by user and varied in width between fences where fences existed, from approximately thirty feet to approximately forty feet. That said public highway was crooked following the higher ground, and being around low, wet places and swamps, but followed the general course and direction of said public highway above described as the Winchester and Portland or Winchester and Deerfield pike, but did not coincide therewith. That about the year 1865 to 1868, the exact time being unknown to plaintiff, an organization known as the Winchester and Deerfield Turnpike Company, under the law then in force, built a toll pike from Winchester through Deerfield to the Jay County line approximately forty feet wide from fence to fence and in so doing followed the general course and direction of said old road established by user as aforesaid, not conforming thereto however, but straightening said old road and taking out the crooks and bends of same for the most part and in places departing from said old road entirely, and in places widening it, the exact change in course and location being unknown to plaintiff. That thereafter about the year 1880 to 1885, the exact time being unknown to plaintiff said toll pike ceased to exist as such and became a part of the free gravel road system of Randolph County, and being the highway hereinbefore described as said Winchester and Portland or Winchester and Deerfield Pike, and so continued until taken over by defendant, State Highway Commission, and designated as State Highyway Number 27 as hereinafter alleged.

"'That heretofore on the ....day of ..........., 19...., said State Highway Commission acting under and pursuant to the act of the General Assembly of the State of Indiana, creating said Commission approved March 10, 1919, and acts amendatory and supplemental thereto by appropriate action took over said highway and designated it as a part of the State Highway System of the State of Indiana, and that said State Highway Commission, acting under said Act, is engaged in improving

that part of said highway located in said Randolph County, including the part thereof that extends along over plaintiff's real estate aforesaid by grading and hard surfacing and the construction of side ditches for drainage.

" 'That heretofore on or about the ........day of January, 1929, the defendant State Highway Commission and the said defendants, members of said commission and the defendant John D. Williams as director of said commission, claiming to act for and in behalf of and as representatives of the defendant State of Indiana, and as a part of the work of improving said public highway and without any proceeding first had to acquire the same in the name of the State of Indiana or otherwise and without the consent and over the objection and protest of plaintiff, wrongfully entered upon plaintiff's said lands and took and appropriated for and added to said public highway the following described part of plaintiff's said real estate to wit: A strip of ground lying immediately east of the east line of said public highway ten feet wide, east and west and the full width of plaintiff's said lands north and south.

" 'That the said lands so owned by plaintiff is an improved farm and consists of sixty acres of cultivated and pasture lands which plaintiff has been using and occupying for farming and pasturing purposes for more than ten years last past. That plaintiff resides on said lands with his family, his residence and other buildings being located near the west end thereof. That along the east line of said highway plaintiff has owned and maintained a fence and a row of shade trees which defendants have destroyed in said appropriation of said strip of ground. That plaintiff's access to said premises has been by a driveway from said highway which access and driveway have been destroyed by said appropriation. That the said strip of ground so taken and appropriated by defendants was at the time it was so taken of the value of $300.00, and that plaintiff's remaining real estate has been damaged by said appropriation to the amount of $200.00.

" 'Wherefore, the plaintiff asks the court that a writ of assessment of damages may issue herein

that he may have his said damages assessed and awarded and for all other proper relief.' "

The appellants herein filed a plea to the jurisdiction, a motion to make more specific, and then a demurrer to each paragraph of complaint. Each motion was overruled and an answer of general denial was filed.

The errors relied upon for reversal are as follows:

(1) The court erred in overruling the plea to the jurisdiction;

(2, 3) that the Randolph circuit court had no jurisdiction of appellants or of the subject matter;

(4) the trial court erred in overruling the motion to make the complaint more specific;

(5) the trial court erred in overruling appellant's separate and several demurrer to each paragraph of the complaint;

(6) the court erred in overruling the appellant's separate and several exceptions to the appointment of appraisers.

It is the contention of appellee that in 1865, and for many years prior thereto, a public highway extended along the west end of his farm, being a highway from Winchester through Deerfield to the Jay county line; that said road had been established by user and that its width between fences was not uniform, being from 30 to 40 feet; that it was crooked, bending around low, wet places, and swamps, but that it followed the general direction of the subsequent Winchester and Deerfield, or Winchester and Portland Pike. That from 1865 to 1868 a toll road was built from Winchester through Deerfield, to the Jay county line, forty feet in width from fence to fence, following in a general way the old course of the road, but in places varying from it. That the toll road ceased about 1880 or 1885, and it became a part of the free gravel road system of Randolph county. The allegations of the complaint show

that the State Highway Commission took over the road and appropriated a strip of ten feet of land off of the west end of appellee's farm without any legal steps to do so, and without paying anything therefor.

It is the position of appellants, that more than one hundred years ago the legislature passed an act authorizing the location of a road from Winchester to Ft. Wayne, 60 feet wide, and that the old road is the same as the new road, and that the center line of the old road was the same as the center line of the Winchester and Deerfield Pike, which was forty feet in width, and for this reason, the State had the right to take the extra ten feet on the east side of the road without any legal proceedings and without compensation.

For many years after the beginning of the State many acts were passed by the legislature authorizing the establishment of roads. An act was passed on January 11, 1823, (Laws of Indiana, 1823, ch. 28, §1, p. 43.) appointing commissioners ". . . to view, locate and lay out a state road, in the nearest and best direction, and on the best ground, from the town of Lawrenceburg in Dearborn County to the town of Brookville in Franklin County, thence to the town of Connersville in Fayette County, thence to the town of Centreville in Wayne County, thence to the town of Winchester in Randolph County, and thence to Ft. Wayne in the county of Delaware. . . . which shall remain a permanent road sixty feet wide."

It is under the foregoing act that appellants claim the right to 60 feet of right of way which takes the 10-foot strip of appellee.

This case was tried in 1929. Daniel Bragg testified that he was 71 years of age; that he owned the farm in question since 1904, and had lived in Randolph County since 1862; that he first lived about three miles east of the Winchester and Deerfield Pike; that he

knew the road before it was a toll road; that the farm is a mile north of Five Points, and three-fourths of a mile south of Deerfield, and that he remembers when toll houses were along the pike; that the first toll house he remembered was about 1870; that at that time it was a mud road and poles and logs were thrown across the road at places, so that travel could pass; that the road between Five Points and Deerfield is in the same place as when he first knew it; that the distance between the fences before they were torn down was forty feet, and that was his understanding of the width of the road when he bought the farm; that the fences torn down by appellants were not the same fences that he first knew; that the first fences were rail—the new fences were placed at about the same place as the old; that his fence was in line with other fences along the road; that he set out catalpa trees along his fence line on the outside. That when he first knew the road it was in woods and unfenced and of different widths. It was not straight and in places would be only wide enough to drive a wagon or sled in winter time and in the spring.

That before this controversy arose the road extended from Winchester through Deerfield to the county line and had side ditches which were inside of the forty feet fences; that the farmers cultivated up to the fences, and orchards were planted, and buildings located with reference thereto.

Calvin Barrett, age 79, testified that he lived most of his life near the road; that the road was not always in the same place; that there would be mud holes for fifty or sixty rods that were impassible; that the farthest point from the present line of the road would be from twenty, or fifty, or one hundred yards west of the present line; that the Toll Pike was built in 1868, or 1869, and was then straightened; that the mud road

was not fenced to any extent; that his father had some fence along the road, but when they built the Pike, he had to set it back; that the Pike Road was made forty feet wide; that when the Pike Road was built there were some fences, but they had to be put back for the forty foot right of way.

David H. Gray, age 78, testified that his earliest recollection of the road was a corduroy; that it was not straight and was built of logs running twelve to eighteen inches, laid side by side cut in lengths of fourteen to sixteen feet; that when he first knew it there were few fences along the road and no regular width of the road.

Isaac Childers, age 73, testified he had known the road since 1865; that it was forty feet wide at that time and the fences about in line; that after the Pike was built and fences built and orchards were planted to the fence line and the premises improved with reference thereto.

John W. McCartney, age 71, testified that he had known the road since a boy; that his father was road supervisor; that it was never built any wider than forty feet since he knew it, and that the fences were forty feet apart and were on a line.

A few other witnesses testified, but their evidence is practically the same as that set out.

The evidence on the part of the appellants is documentary, which was introduced, evidently for the most part, to show that the old road extending north from Winchester was a state road opened under the Acts of 1820 and 1823.

The first exhibit was the petition to establish the pike road over the road in question filed before the Board of Commissioners of Randolph County on September 4, 1865. It refers to "the State road leading from Winchester to Portland." Exhibit 2, refers to an

order recorded in the commissioners record in Jay county to clear the right of way on the Winchester and Ft. Wayne road to a width of 50 feet. Exhibit 3, refers to an order of the commissioners of Jay county on November 9, 1836, appointing David Baldwin, to superintend the three per cent fund appropriated to the use of state roads and bridges in Jay county. Exhibit 4, refers to an order of the board of county commissioners of Jay county, September 1, 1856, where a petition again speaks of "the State Road leading from Winchester to Portland." Exhibit 5, refers to a report of viewers on highway wherein it refers to "the Winchester and Deerfield State Road." Exhibit 6, refers to the minutes of the Wayne county board of commissioners, November, 1823, wherein "Elisha King is appointed supervisor on State Road leading to Fort Wayne from the S. E. corner of Caleb Lewis field to the Main Street in Centreville." Exhibit 7, is the order accepting the turnpike or toll road as a free gravel road on December 15, 1886. Exhibit 8, is the record of the commissioners of Randolph county showing a petition for the appointment of a "suitable person to view, mark, and locate a County Road commencing on the Centreville State Road and etc."

The first act relating to a road from Lawrenceburg to Winchester is found in the act of January 22, 1820, (Laws of Indiana 1820-1824) wherein commissioners were appointed "to view, locate and lay out, a permanent road, in the nearest direction, and on the best ground, from the town of Lawrenceburg, in the county of Dearborn, to the town of Brookville, in the County of Franklin, thence to the town of Connersville, in the County of Fayette, thence to the town of Waterloo, in Wayne County, thence to the town of Centreville, in Wayne County, thence to the town of Winchester in

Randolph County." And under the 2nd section of the act it could not be more than seventy feet in width.

The next reference is found in the act of January 9, 1821, (Laws of Indiana 1821, ch. 8, p. 21, §2) wherein commissioners were appointed ". . . to locate and mark the road heretofore established from the town of Lawrenceburg in the county of Dearborn to Winchester in the county of Randolph with the following variation from the former act, viz: from Brookville to pass through Fairfield and Dunlapsville in Franklin county and Brownsville in Fayette county, and to be extended from Winchester to Fort Wayne."

The next act concerning this road is found in the act of January 11, 1823, (Laws of Indiana 1826, p. 43) which has heretofore herein been set out.

By an act of January 24, 1831 (Laws of Indiana 1831, ch. 75, p. 122, §1), William Scarce of Wayne county was appointed a commissioner ". . . to survey, mark and locate a state road from Richmond in said county, by Newport in said county, and thence on the best route, towards Winchester in Randolph County to the north line of Wayne county: that John James be appointed a commissioner to survey, mark and locate and continue said road, commencing at the same point on said north line, by Winchester in Randolph county, thence on the direction of Ft. Wayne to the north boundary of the county attached to Randolph county; and that John B. Hedges be appointed a commissioner to survey, mark and locate and continue the same commencing at the same point on said north line, to Ft. Wayne in Allen county."

It is provided in §4 that the road be opened any width not exceeding forty feet.

In our judgment the last act, January 24, 1831, cited is very material to a proper solution of the question before us. More than one hundred years have passed

since the different acts were passed; generations have come and gone and little has been left us to definitely tell the true story of the location of the highway in question. We will place ourselves, as nearly as possible in the position of those who passed the various acts and in doing this, what conclusion must we necessarily reach?

The first road (Act January 22, 1820) went to Winchester. The second act (January 9, 1821) provided for the marking and locating of the road heretofore established from Lawrenceburg to Winchester, with certain variations, and to be extended to Ft. Wayne. The third act of January 11, 1823, provided for the viewing, locating, and laying out of the road from Lawrenceburg to Brookville, thence to Connersville, thence to Centerville, thence to Winchester, and thence to Ft. Wayne. The fourth act of January 24, 1831, provided for a road from Richmond to Winchester and thence to Ft. Wayne and the width of the road was not to exceed *forty feet*.

The first two acts took the road to Winchester and the third act took it to Winchester and then to Ft. Wayne and the fourth act took it to Winchester and then to Ft. Wayne and limited it to forty feet. Although the act of 1823, and the act of 1831, start from different points, both acts took the road to Winchester. Is it reasonable to believe that two roads were intended to lead from Winchester to Ft. Wayne through an unbroken forest? Is it not more reasonable to believe that only one road was intended? There is no evidence to show that any road was actually laid out, or even surveyed under the provisions of either act. Just what happened is left, to a very large extent, to conjecture, but, reasoning from a common sense standpoint, we are lead to believe that we should rely upon the act of 1831, in taking the road from Winchester to Ft. Wayne, and

under this act the width of the road was limited to not to exceed forty feet.

The highway authorized by the act of 1823, from Lawrenceburg to Ft. Wayne was evidently not opened under said act farther than Centreville. We think this statement is borne out by the acts of February 10, 1831, and the act of January 24, 1831. Centreville was located on the Cumberland or National road which road was authorized by an act of Congress on March 29, 1806. The act of February 10, 1831 (Laws of Indiana 1828-1831, p. 150.) was an act to establish a state road from Centreville to Winchester. If the road had been established and opened between these two points in 1823, why was the latter act passed? Is it not reasonable to believe that the road was never laid out and opened under the act of 1823, farther than Centreville then on the Cumberland road and then under the act of February 10, 1831, it was extended on to Winchester. The act of January 24, 1831, established the road from Richmond to Winchester and then to Ft. Wayne, as heretofore set out, and established the width at not exceeding forty feet. So it would appear that the road was never laid out and opened under the act of 1823 to Ft. Wayne, but was opened from Winchester to Ft. Wayne under the act of January 24, 1831. All of the exhibits introduced by the State can be reconciled with the foregoing explanation except possibly "Exhibit 2," which was an order to "cut the Ft. Wayne and Winchester road on the west side . . . and clear the fallen timber off the whole fifty feet." Even this order does not prove the contention of the appellants that the right of way was sixty feet, because it says the whole fifty feet, and, under this theory the State took five feet of ground belonging to the appellee. But we think this exhibit can also be reconciled with our theory of the case. It is true that the act of 1823, theoretically took

the road from Lawrenceburg to Ft. Wayne and made the width sixty feet. The road, however, in our judgment, was never opened under said act farther than Centreville, and the later act of February 10, 1831, which superseded the former, extended the road from Centreville to Winchester, and the act of January 24, 1831, superseded the act of 1823, and extended the road from Winchester to Ft. Wayne and fixed the width at not more than forty feet. When the commissioners of Jay county in 1837 made the order to clear the right of way fifty feet it may have been that they were of the impression that the act of 1823 was in force, and were totally ignorant of the law of January 24, 1831. At most the order was void, and, moreover, there is no evidence whatever to show that any work was ever done under said order.

The evidence in the case confirms our theory of the case as we see it. There is no evidence to show that the road was ever more than forty feet in width. The evidence shows that the fences were forty feet apart; that the land was cultivated up to the fences; that orchards were put out and premises planned with reference to the forty foot line; that from the beginning the road was understood to be forty feet wide and no one claimed the road to be of any greater width until the appellants made the claim that it was a sixty foot right of way.

The appellee alleged in his complaint that the road in question was established by user and the appellants insist that the appellee is bound by the allegation that he failed to establish this proposition and therefore must fail in this action. We do not assent to this proposition. What difference does it make whether the road was established by user or by an act of the Legislature? If, by either method, the State has appropriated land belonging to appellee he is en-

titled to recover. And we think without question the state appropriated land belonging to appellee.

We do not think the court erred in its ruling upon the question of jurisdiction. Under §§7677, 7681, and 8292, Burns 1926, §§3-1702, 3-1717, Burns 1933, §14062, Baldwin's 1934, in proceedings in the exercise of Eminent Domain, jurisdiction is in the county where the real estate is situate. Jurisdiction is in the county where the land is situate when the Highway Commission is the moving party and the same situation applies to the owner of the land when he is the moving party. Section 1550, Burns 1926, §4-1501, Burns 1933, §1617, Baldwin's 1934, does not apply as contended for by appellants. The complaint was sufficient and the demurrer was properly overruled.

Judgment affirmed.